### SAGER v. STAMPS et al.
### No. 194.

Municipal Court of Appeals for the District of Columbia.

June 22, 1944.

Robert E. Lynch, of Washington, D. C., for appellant.

Herman Miller, of Los Angeles, Cal. (Dorsey K. Offutt, of Washington, D. C., on the brief), for appellees.

Ernest F. Henry, Gen. Counsel, and James A. Crooks, Asst. Gen. Counsel, both of Washington, D. C., for Administrator of Rent Control, amicus curiae.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

### RICHARDSON, Chief Judge.

This is an appeal from the Municipal Court for the District of Columbia, sitting as a three judge court to review the action of the Administrator of Rent Control in a proceeding to determine maximum rental and minimum service under the District of Columbia Emergency Rent Control Act of December 2, 1941 (Code 1940, § 45—1601 to 45—1611).

The property involved, a group of four family apartment buildings, was completed for occupancy in October, 1941. It was then rented and has since been occupied by tenants, appellees here, upon a schedule of rents fixed by the owner, now appellant.

Maximum-rent ceilings and minimum-service standards, applicable to housing accommodations in the District of Columbia during the war emergency are established by or under Section 2 (1) of the rent act. Code 1940, 45—1602. It provides:

"(1) On and after the thirtieth day following the enactment of this Act, subject to such adjustments as may be made pursuant to sections 3 and 4, maximum-rent ceilings and minimum-service standards for housing accommodations excluding hotels, in the District of Columbia shall be the following:

"(a) For housing accommodations rented on January 1, 1941, the rent and service to which the landlord and tenant were entitled on that date.

"(b) For housing accommodations not rented on January 1, 1941, but which had been rented within the year ending on that date, the rent and service to which the landlord and tenant were last entitled within such year.

"(c) For housing accommodations not rented on January 1, 1941, nor within the year ending on that date, the rent and service generally prevailing for comparable housing accommodations as determined by the Administrator."

February 2, 1942, in a general order requiring landlords of property within the purview of Section 2(1)(c) to file petitions for determination of maximum-rent ceilings, the Administrator stated that until further notice he "will assume—but not concede that the first rent collected by the landlord for such housing accommodations is fair and reasonable."

The first proceeding affecting the property in question was initiated by appellant on August 27, 1942, by filing with the Administrator of Rent Control as to each unit a "Petition of Landlord for Adjustment of Rent or Service." Therein he requested "An adjustment in the maximum-rent ceiling applicable to the housing accommodations in question on the ground that due to the peculiar circumstances set forth herein affecting such housing accommodations, the maximum-rent ceiling is substantially lower than the rent generally prevailing for comparable housing accommodations."

The matter was heard by an examiner of the Office of Rent Control on January 29, 1943. Testimony was given by appellant, who appeared without counsel. Documents entitled "Petition of Tenant for Adjustment of Rent or Service," which had not been filed or served, were received in evidence by the examiner after the several tenants had been sworn and had adopted the same as their testimony. An inspection of the premises was made by the examiner.

The examiner's findings and a form of recommended order were filed on March 10, 1943. He held that the existing rental was that generally prevailing for comparable housing accommodations. The recommended order was that certain items of service be furnished, restored or maintained, and that the maximum-rent ceiling be the rent then being paid. Copies of his findings and recommended order, under the signature of the examiner, were served

by ordinary mail. Appended thereto was an unsigned notice that the findings and order of the examiner "will be deemed to be the findings and order of the Administrator" unless within ten days application for review is filed or rehearing or extension of time is granted "within the discretion of the Examiner or the Administrator."

A motion for rehearing and to set aside the findings and order was filed by appellant on August 12, 1943. It was asserted, inter alia, that appellant was not in Washington and did not receive the copies of the examiner's findings and recommended order until after the ten days allowed for review had expired. This motion was denied and the petition for review was filed by appellant in the Municipal Court.

What purports to be a complete copy of the proceedings before the Administrator, omitting the testimony before the examiner, was filed.[1] Motions to dismiss the petition for review were filed by appellees and by the Administrator. Grounds assigned were the failure to petition for court review within ten days after the issuance of the Administrator's order, a limitation imposed by Section 9 (a), and, by the Administrator, that the proceedings before him were under Section 2(1)(c) of the Act, from which no court review may be sought. The motions to dismiss were granted and from the dismissal this appeal has been taken.

As it is clear that the jurisdiction of the Municipal Court is limited to the review of orders of the Administrator under Section 4,[2] the question whether the proceedings involved here were under that section, or under Section 2, requires first consideration.

Section 2(1)(c), quoted in full, supra, imposes no procedural conditions upon either the parties interested or the Administrator. Nor is any method of determination of maximum-rent ceilings or minimum-service standards prescribed by other sections of the Act or in regulations promulgated by the Administrator under the authority conferred by Section 7(b) of the Act. Relating only to property non-existent or unoccupied by tenants on January 1, 1941, it may reasonably have been expected that the determination would be ex parte and the procedure informal. Landlord or tenant, were the premises then or thereafter rented, could immediately or at any time thereafter secure a review of the determination in a full and formal hearing by filing a "Petition for adjustment" under Section 4.

In contrast to Section 2(1)(c), Section 4, in authorizing landlord or tenant to petition the Administrator to adjust maximum-rent ceilings or minimum-service standards, or both, in sub-section (f) provides that— "A petition made pursuant to this section shall be subject to the provisions of sections 8 and 9 of this Act." The latter contain elaborate procedural provisions. They require that any petition filed under Section 4 be promptly referred to an examiner; that notice of the reference be given in a manner to be prescribed by regulation; that parties be afforded an opportunity to be heard or to file written statements. They require the examiner to make findings of fact and recommend an appropriate order; that copies be served upon the parties; they provide that within five days after service either party may request that the recommended order be reviewed by the Administrator, and that if there be no such request the findings and recommended order of the examiner shall thereupon be deemed to be the findings and order of the Administrator. Further proceedings by the Administrator are authorized, and review of any order of the Administrator under Section 4 may be had by application within ten days to the Municipal Court for the District of Columbia.

■ The purpose of Section 2(1) was the establishment of maximum-rent ceilings and minimum-service standards for all housing accommodations rented or to be rented in the District of Columbia during the war emergency. The purpose of Section 4 was to afford an opportunity for the adjustment of such ceilings or standards if either landlord or tenant regarded them as inadequate or unfair. Without an existing maximum-rent ceiling or minimum-service standard as defined in Section 2(1), resulting automatically under sub-sections (a) and (b) or by determination of the Administrator under (c), a proceeding for adjustment under Section 4 was unauthorized and the procedural and review provisions of Sections 8 and 9 were inapplicable.

■ We do not regard the general order of the Administrator of February 2,

---

[1] Code 1940, § 45—1609.  [2] Code 1940, § 45—1604.

1942, supra, as an adoption of the rent then charged as a maximum-rent ceiling. The language was carefully qualified, and the basis for the determination required by Sections 2(1)(c), comparable rents of similar property, could not be ignored and supplanted by some other standard unauthorized by the statute.

We, therefore, hold that such proceedings as were taken in the present case may be justified only as authorized by Section 2 of the Act, and that the petition for court review was properly dismissed.

As Section 2(1)(c) requires a determination by the Administrator, it is questionable whether the examiner's findings and recommended order became automatically the determination of the Administrator without consideration and affirmative action by him. But this is a matter upon which we now express no opinion.

Affirmed.