## HICKS v. BEHREND.

## BEHREND v. HICKS.

Nos. 226, 227.

Municipal Court of Appeals for the District of Columbia.

Dec. 1, 1944.

Rehearing Denied Dec. 30, 1944.

---

Raymond M. Hudson, of Washington, D. C. (Minor Hudson, of Washington, D. C., on the brief), for appellant Hicks.

Herman Miller, of Washington, D. C., for appellant Behrend.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

The action below was by a tenant against her landlord and was based upon the District of Columbia Emergency Rent Act.[1] In count I, the tenant asked damages of $276.04, being double the rent allegedly collected by the landlord in excess of the maximum rent ceiling, plus reasonable attorneys' fees, alleged to be $70. There was judgment for the tenant on this count in the sum of $276.04, plus attorneys' fees of $25, and from this the landlord has appealed.

In count II, the tenant alleged three hundred and three separate violations of the minimum service standard, for which she asked damages in the sum of $15,-100 and attorney's fees of $2500. On this count there was a judgment in favor of the landlord and from this the tenant has appealed.

### The Landlord's Appeal.

The property was leased by the tenant on June 15, 1940, for one year, at a rental of $125 per month. The lease contained a provision that the tenant should have an option to extend the lease for an additional year at a term rental of $1620, payable in monthly instalments of $135. The tenant was required to exercise the option in writing one month prior to the expiration of the lease. She failed to so exercise her option, but nevertheless on June

---

[1] Code 1940, § 45—1601 to 1611.

18, 1941, the landlord and tenant in writing agreed that the expired lease should be extended for one year from June 15, 1941, on the terms specified in the option. At the expiration of that period apparently no new agreement was executed but the tenant remained in possession paying the monthly rent of $135.

The Emergency Rent Act, effective January 1, 1942, provided that the maximum rent for housing accommodations rented on January 1, 1941, should be the rent to which the landlord was entitled on that date. On January 1, 1941, the first yearly lease was in effect and the rent to which the landlord was entitled was $125 per month. On January 15, 1943, the Rent Administrator determined the maximum rent for the premises to be $135 per month, effective January 26, 1943. The tenant claims that the landlord collected $10 a month in excess of the maximum rent ceiling for the period from the effective date of the Rent Act to January 25, 1943. The landlord contends that since the original year's lease provided for the extension at $135 per month, and the extension agreement was in effect prior to the effective date of the Rent Act, that the maximum rent ceiling was not $125 but $135, and that accordingly no excess rent was collected.

Undoubtedly the rent to which the landlord was entitled on January 1, 1941, was $125 per month and this, by the terms of the Act, became the maximum rent ceiling, unless the $135 provided for in the option and agreed upon in the extension became the legal ceiling.

In our opinion the maximum rent for the property was that to which the landlord was entitled on January 1, 1941, namely, $125 per month, and the option to extend did not have the effect of raising the rent ceiling. It is true that at the time the first lease was made, and indeed at the time the extension was made, the Rent Act was not in existence and was not anticipated by either party. Nevertheless, the purpose of the Act was to freeze the rents as of January 1, 1941, and the extension agreement, if given effect, would result in an increase of rent from that of January 1, 1941. On that day the landlord was entitled to only $125 per month, and while the tenant had an option at that time to extend the lease at the increased rate, it was but an option. The tenant was not bound to exercise the option and the landlord had no right to demand that it be exercised. Under the Rent Act the rent to which the landlord was entitled on January 1, 1941, automatically became the maximum rent ceiling for the property and any rent collected in excess of the ceiling so fixed was in violation of the Act.

The landlord argues that this case is controlled by our decision in Isquith v. Athanas, D.C.Mun.Ct.App., 33 A.2d 733. In that case there was a lease for five years, executed prior to the passage of the Rent Act, which provided for a term payment of $9450 payable in monthly instalments of $100 during the first six months, $125 during the second six months, $150 during the following year, and $175 during the remaining three years. The Rent Act became effective during the period in which the $125 per month schedule was in effect, but we held that the rent to which the landlord was entitled as of January 1, 1941, was the total term rental and that the increased monthly payments did not constitute a violation of the Act. That case, however, is clearly distinguishable from the present one. There the rights and obligations of both landlord and tenant were fixed prior to the "freezing date" of the Act. The tenant had obligated himself to pay, and the landlord was entitled to receive, the total term rental and the fact that the total was payable in monthly instalments on a rising basis did not amount to an increase of the rent to which the landlord was entitled as of January 1, 1941.

In this case the only rent which the tenant was obligated to pay, and the landlord entitled to receive, on January 1, 1941, was $125 per month and this sum by reason of the Act became the maximum rent ceiling for the property.

It is further insisted by the landlord that the Administrator by his order of January 15, 1943, found that the rent ceiling prevailing on the property at the hearing date was $135 per month. It is true that in the order reference is made in the findings of fact to the "present maximum rent ceiling of $135 per month," but it is apparent that the Administrator was not attempting to determine the existing rent ceiling on the property. The Administrator may determine the rent ceiling only on property which was not rented on January 1, 1941, or within the preceding year. This property was rented on January 1, 1941, and its rent ceiling was fixed by the Act. The Rent Administrator may on pe-

tition adjust the maximum rent and it is apparent that he intended to do nothing more than this by his order because the order specifically states that the maximum rent ceiling for the premises "is determined to be $135 per month, effective January 26, 1943."

The landlord admittedly collected rent in excess of $125 per month for the period in question and the tenant was entitled to judgment for double such excess.

### The Tenant's Appeal.

The numerous items in count II, relating to the alleged failure and refusal of the landlord to maintain the minimum service on the property, concerns the condition of the roof, stoves in the basement and first and second floors, plastering in the bathrooms on the first, second and third floors, heaters for hot water, pipes and fixtures in the bathrooms, and the furnace and its pipes. Prior to bringing this action the tenant filed a petition with the Administrator of Rent Control under Section 4(c) of the Act.[2] That section provides:

"Any tenant may petition the Administrator on the ground that the service supplied to him is less than the service established by the minimum-service standard for his housing accommodations, but in the case of a hotel, is less than the established or standard service supplied as of January 1, 1941; whereupon the Administrator may order that the service be maintained at such minimum-service standard, or that the maximum-rent ceiling be decreased to compensate for a reduction in service, as he deems necessary or appropriate to carry out the purposes of this Act."

The petition of the tenant alleged as the basis of complaint that the service supplied was less than the service that should be supplied under the minimum service standard and followed this with some specifications of that complaint with respect to the conditions of the roof, furnace and pipes, plumbing pipes, water heater, and flush tanks in the bathrooms. The relief asked was that the roof, the furnace and the pipes be repaired.

The tenant's petition was heard together with the landlord's petition for an increase of rent. On the tenant's petition it was necessary for the Administrator to find the minimum service standard existing on the property and the violations of that standard, if any; and, if violations were found, to order the landlord to maintain the minimum service standard or order a compensating reduction in rent.

The Administrator after hearing found that the minimum service standard of January 1, 1941, was determined by the provisions of the then existing lease, and that the landlord had made the repairs to which he had agreed. Accordingly no relief was granted to the tenant. If she was dissatisfied with this order she had a right to have it reviewed by The Municipal Court for the District of Columbia,[3] but she took no action to obtain that review. Accordingly, we think the trial court was correct in holding that it could not re-examine these same matters in this proceeding. If a tenant feels that a landlord is failing to comply with the minimum service standard he has the choice of two remedies. He may seek relief before the Administrator under Section 4(c),[4] or he may bring a court action under section 10 (a)[5] for double the value of the services refused or for $50, whichever is greater. However, he cannot pursue his remedy before the Administrator and failing in that retry the same issues in a court action for damages.

It is argued by the tenant, however, that certain of the items, namely, the stoves, were not mentioned in the petition before the Rent Administrator. Whether or not mentioned in the petition we think those items could and should have been brought to the attention of the Administrator at the hearing. All these matters existed at the time of the hearing and related to the question of the minimum service standard. Having submitted that question to the Administrator, it was the tenant's duty to present all the evidence bearing on the question.

A part of the items under count II related to the alleged failure of the landlord to comply with the Rent Administrator's order concerning replacing of plaster on ceilings of the bathrooms. This part of the order resulted from the fact that the landlord had made certain repairs found by the Administrator to be voluntary on his part and the order required that the landlord replace plastering torn off in the making of those

---

[2] Code 1940, § 45—1604 (c).

[3] Code 1940, § 45—1609.

[4] Code 1940, § 45—1604 (c).

[5] Code 1940, § 45—1610 (a).

repairs. On these items the plaintiff was permitted to testify and the landlord offered evidence that he promptly complied with this part of the order. The trial court evidently found from the conflicting evidence that there was no refusal on the part of the landlord to furnish these services and accordingly we are bound by such finding.

Affirmed.