## GOULD et al. v. DELSNIDER.
### No. 264.

Municipal Court of Appeals for the District of Columbia.

April 16, 1945.

Thomas B. Heffelfinger, of Washington, D. C., for appellants.

Thomas J. Ahern, of Washington, D. C., for appellee.

James A. Crooks, Asst. General Counsel, of Washington, D. C. (Ernest F. Henry, General Counsel, of Washington D. C., on the brief), for Robert F. Cogswell, Administrator of Rent Control for the District of Columbia, amicus curiae.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

In furtherance of the national defense program, Congress in December 1941 enacted an Emergency Rent Act for the Dis-

---

[7] The Santissima Trinidad, 7 Wheat. 283, 5 L.Ed. 454; Travers v. Reinhardt, 25 App.D.C. 567; 35 C.J.S., Falsus in Uno, Falsus in Omnibus.

trict of Columbia.[1] Among its stated purposes were to prevent undue rent increases and other inflationary practices relating to housing accommodations. Comprehensive in its terms, the act provided for the appointment of an Administrator of Rent Control and vested him with broad powers, including the power to regulate rents in accordance with certain prescribed formulae. The Act froze rentals as of the amount payable on January 1, 1941.[2] For property not rented on January 1, 1941 or within the year ending on that date, it empowered the Administrator to determine the rent to be paid, based upon "the rent and service generally prevailing for comparable housing accommodations."[3] Another part of the Act,[4] prescribed the proceedings by which a landlord or tenant might petition the Administrator for adjustment of rent. Congress also authorized action by a tenant (or by the Administrator in his behalf) to recover from a landlord who received a higher than lawful rent double the amount of the overcharge or $50, whichever is greater, together with reasonable attorneys' fees and costs.[5]

This appeal is brought here by tenants who had sued under the double-damage provision just mentioned but were awarded a lesser sum. Directly involved are two questions: (1) Where property was rented on the freeze date of January 1, 1941 was the rental payable on that date the only rental ceiling to be observed, and (2) if such ceiling was violated was the tenant entitled to double damages, or did the trial court have discretionary power to allow a lesser amount? Incidentally involved are two other questions: (1) What was the effect of an order of the Administrator purporting to "adjust" rent, based upon landlord's misrepresentation that the property was not rented on the freeze date when in fact it was, and which order was vacated upon discovery of the true facts, and (2) was the landlord entitled to claim that the statutory ceiling did not apply because existing improvements had so altered the property as to make it constitute different housing accommodations than those existing on the freeze date? The facts important to our decision are these:

The landlord (defendant below and appellee here) purchased the house involved in February 1942. At that time it was renting for $18.50 per month, though testimony showed that on January 1, 1941, it had rented for $15.50. The house was vacant from April 1942 until April 1943, during which period defendant remodelled it, converting it from a "shack" to a modern, well-equipped residence. She testified she added electricity, inside plumbing, heat, interior finishing and other miscellaneous repairs, at a total cost of $2500. In April 1943, the house being unfinished and the renovations incomplete, she rented the house as an accommodation to a friend at $60 per month. On August 1, 1943, she leased the house in its finished state to plaintiffs for $100 per month. On September 28, 1943 she filed an "Application for Maximum Rent Ceiling" which contained a printed statement in large type, in the body of the form, to this effect: "Applicant represents that he is entitled to the use and occupancy as (Owner, lessee, etc.) of the above mentioned housing accommodations which were not rented on January 1, 1941 or during the year 1940 * * *".

On March 27, 1944, the Administrator acting on the application determined the ceiling to be $85, which he found to be the prevailing rent for comparable housing. On June 30, 1944 after notice to landlord the Administrator set aside the order, on the ground that it was based upon the representation above quoted and which he had found to be "incorrect." Landlord then filed a petition for adjustment; but before it was acted upon she had regained possession of the premises for her own use and occupancy and the Administrator dismissed the petition on the ground "that the question of a determination of a maximum rent ceiling for the premises was moot."

The tenants had in the meantime paid $100 per month for eight months and $85 per month for two months. In the court below they claimed double the difference between the amount paid and the $15.50 rental which was payable on the freeze date. The trial judge took the case from the jury and directed a verdict for plaintiffs for $240, representing double the difference between $85 and $100 per month for an eight month period; he also directed a verdict for defendant against plaintiffs for $255 representing rent for the

---

[1] Code 1940, §§ 45—1601 to 45—1611.

[2] Code 1940, § 45—1602.

[3] Code 1940, § 45—1602.

[4] Code 1940, § 45—1604.

[5] The act also provided for criminal prosecution for wilful violations (Code 1940, § 45—1610); but that part of the act is not germane to this appeal.

last three months of their tenancy at $85 per month.

 The statute fixed the ceiling on such property as follows: "For housing accommodations rented on January 1, 1941, the rent and service to which the landlord and tenant were entitled on that date."[6] It is clear beyond debate that it was unlawful for any landlord to demand or receive more than such frozen rental. Nor were landlords left without protection. The Act[7] carefully provided a procedure by which petitions for adjustment of rent might be presented for the determination of the Administrator; and we take judicial notice that many hundreds of such petitions have been filed with and decided by him. But without official action by the Administrator no landlord may collect more than the amount for which the property rented on January 1, 1941. That rental automatically became, by virtue of the statute, the maximum rent ceiling for every such dwelling unit in the District of Columbia. Hicks v. Behrend, D.C.Mun.App., 40 A.2d 78.

 That takes us to the first of the incidental questions we have mentioned, involving the effect of the Administrator's order of March 27, 1944, purporting to fix the rental at $85 per month. We agree with the Administrator that the order was of no effect and that he was correct in vacating it. The order was entered under a misapprehension of the true facts. It was based upon landlord's representation that the property was not rented on the critical freeze date. Had that been true the Administrator could properly have proceeded to *determine* what the ceiling should be, based upon "the rent and service generally prevailing for comparable housing accommodations."[8] But the representation not being true, the ceiling fixed by statute, based upon the frozen rental, was the only one which governed. No other standard would or could apply. The landlord's remedy was therefore not to seek a *determination* by the Administrator, but to petition for an *adjustment* as prescribed by the Act and to reveal the true facts.[9] The two procedures are completely different. They are based upon entirely dissimilar set-ups.

In the one case where the property had not been rented on January 1, 1941 or during the preceding year, no ceiling existed and the Administrator had express power, as we have already said, to *determine* what the rental should be. In the other situation, where property had been rented on the freeze date, Congress itself had established the maximum ceiling and the Administrator had no power to determine it. His power was limited to *adjusting* the rental through the machinery of his administrative tribunal.

We are not making a mere play upon words. We are giving practical effect to the express language of the statute. We have pointed out this important difference before. Hicks v. Behrend, D.C.Mun.App., 40 A.2d 78; Sager v. Stamps, D.C.Mun. App,. 38 A.2d 113.[10] Nor does it matter that the landlord may have made an honest mistake in alleging that there was no statutory ceiling on the property. Assuming that there was no wilful falseness on her part the Administrator was still correct in vacating the $85 per month order as soon as he discovered the true facts. Indeed we think he was required to do so. We therefore rule that it was error for the trial judge to adopt the $85 figure as the applicable ceiling.

 The maximum ceiling having been fixed by statute and there being no question that the landlord collected more than such ceiling rental, what was the proper measure of plaintiff's recovery? The answer is given in the Act[11] which provides that in such case the tenant may bring "an action for double the amount" of the overcharge plus attorneys' fees and costs. The answer has also been very clearly given in Bowles v. American Stores, Inc., 78 U.S. App.D.C. 238, 139 F.2d 377, certiorari denied 322 U.S. 730, 64 S.Ct. 947, where the court stated in unequivocal language that plaintiff's recovery must be not less than that prescribed by statute, that it was the Congressional intent to eliminate judicial discretion and to give the consumer (tenant here) the unqualified right to recover such amount upon establishing the overcharge. The case, moreover, held that neither good faith nor an honest or intelligent endeavor to comply with the law consti-

6 Code 1940, § 45—1602.

7 Code 1940, §§ 45—1604 and 45—1608.

8 Code 1940, § 45—1602.

9 Moore v. Coates, D.C.Mun.App., 40 A.2d 68.

10 Appeal denied by United States Court of Appeals March 16, 1945.

11 Code 1940, § 45—1610.

tutes a defense to this type of consumer action.[12]

It may be that an equitable solution may have been provided for by the Administrator by an order or regulation permitting a landlord who has made a substantial capital investment in improvements, or who is honestly in doubt as to what rent he may lawfully collect, to receive or permit to be deposited in escrow a stated sum, subject to later and retrospective adjustment by the Administrator after hearing.[13] Unfortunately, the Administrator has provided no such administrative solution. We are therefore bound to take the law as it stands and determine the rights of the parties accordingly.

Finally, and incidentally to the question just discussed, we must consider the landlord's contention that there was in fact no ceiling on this property because the house in the greatly improved condition in which it was rented to these tenants was not the same "housing accommodations" which rented for $15.50 on the freeze date.[14]

What the landlord is really saying is that she has made "a substantial capital improvement or alteration." Code, § 45—1604(b). To be compensated therefor, she had the right under the section just cited to petition the Administrator for an increase of rent. She had no right to make the increase on her own initiative. Assuming that this landlord made improvements so extensive as to transform a repulsive, almost uninhabitable "shack" into a beautiful and attractive home, she did so with knowledge that the Rent Act did not permit her to make her own new terms with the tenant, that she must follow the method prescribed by law to secure an increased rental, and that any agreement in contravention of the statute was fraught with dan-

ger. Nothing in the case can alter the underlying fact that the Rent Administrator, and he alone, has power to make adjustments of rent.

Reversed with instructions to award a new trial.

---

[12] That case was based upon an overcharge under the Price Control Act. That Act has since been amended so as to vest discretion in the trial courts to entertain the defense that "the violation * * * was neither wilfull nor the result of failure to take practicable precautions * * *." See Amendments To The Emergency Price Control Act of 1942, Public Law 383—78th Congress, Chapter 325, 2d Session, S. 1764, 50 U.S.C.A.Appendix § 925(e). But the Rent Act with which we are here concerned reads almost exactly like the original Price Control Act.

[13] An example of such a solution is to be found in Section 4(j) of the O.

P. A. "Rent Regulations for Housing" which permits a landlord to increase rent when he changes premises from unfurnished to furnished, but,

"If the landlord fails to file a registration statement within the time specified, the rent received from the time of such first renting shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed * * *"

See also Supplementary Amendment No. 3, 7 F.R. 7404, authorizing interim order fixing rents immediately upon filing an application.

[14] Compare Gilbert v. Thierry, D.C. Mass., 58 F.Supp. 235.