**PARKER et al. v. WILLIAMS.**

No. 1056.

Municipal Court of Appeals for the District of Columbia.

Argued May 21, 1951.

Decided June 22, 1951.

654

Barrington D. Parker, Washington, D. C., for appellants.

Denis K. Lane, Washington, D. C., with whom John T. Bonner, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

A tenant filed suit against her landlords under our local Rent Act for $1387, covering double the amount of certain rent overcharges.[1] The landlords resisted the claim and also filed a counterclaim and a separate suit for possession and for rent in arrears. The two cases were consolidated for trial. At the close of the evidence the trial judge submitted one question to the jury under a special interrogatory pursuant to Municipal Court Rule 45. The interrogatory as framed told the jury that the parties had stipulated that the landlords had collected a monthly rental of $77.50 from January 1948 through July 1949, and the jury was only asked to find if these rentals were collected "in good faith on the assumption that the sum of $77.50 was the legal rent ceiling for the premises."[2] The jury answered "No" and later the trial judge decided that the tenant was entitled to a directed verdict in her claim for overcharge. He also decided that the landlords were entitled to a credit of $478.57 for rent and water rent due and ordered a net verdict in favor of plaintiff-tenant for $908.43. Landlords bring this appeal.

1. Code 1940, Supp. VII, 45–1610.

2. Though the landlords objected to the submission of the interrogatory the record does not show upon what grounds such objection was based.

The position of the landlords is that they were entitled to a ruling that as a matter of law they acted in good faith in collecting the $77.50 rental. They say that under the Rent Act they cannot be held liable for damages "for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this chapter or any regulation, order, or requirement thereunder, notwithstanding that subsequently such provision, regulation, order, or requirement may be modified, rescinded, or determined to be invalid." Code 1940, Supp. VII, 45–1610(c).

■ We start out by assuming that the interrogatory was submitted under correct instructions as to what amounts to good or bad faith because the accuracy of the judge's charge has not been challenged in the trial court or here. De Bobula v. Coppedge, D.C.Mun.App., 40 A.2d 255. Thus the only issue for us to decide is whether the question of good faith should have been submitted to the jury at all.

■■ There was evidence to show that the premises involved were rented on January 1, 1941 for $41 per month, which under the Rent Act became the automatic or frozen ceiling. Hicks v. Behrend, D.C. Mun.App., 40 A.2d 78. An order of the Rent Administrator was offered to show that a maximum ceiling for the premises was determined to be $77.50 on December 11, 1947.[3] Later, when the Administrator discovered that he had been acting under the mistaken belief that the premises had not been rented on the January 1, 1941 freeze date, he rescinded such order. This was done after a hearing. As said before, landlords since January 1948 had been collecting a $77.50 monthly rental from the tenant who brought the present action. In addition to denying that the landlords had been relying on the invalid order, the tenant offered further evidence challenging their alleged good faith. She showed that

3. A "determination" of rent ceiling is made when no frozen ceiling exists; and adjustment is made under Code 1940, Supp. VII, 45–1604, for cause shown. See Gould v. Delsnider, D.C.Mun.App., 42 A.2d 140, reversed on other grounds, 81 U.S.App.D.C. 54, 154 F.2d 844.

the present landlords became record owners of the property in 1946 through the death of the contract purchaser, apparently a member of the family (William Parker, Sr.). They had some dealings with the tenants who were in possession at that time (and had been since 1933) and were paying a monthly rental of $41. Shortly after these landlords became owners they served notice on those tenants that they desired the property for their personal use and occupancy. A suit for possession was filed, and it is of particular importance, as bearing on the question of the good faith of the Parkers, that this suit was settled by a stipulation under which the tenants agreed to vacate the premises in ninety days, conditioned upon the payment of $41 per month,—the same rent which was paid on the freeze date, January 1, 1941. Under this stipulation the property was later vacated. The landlords wished to put the house in such condition that they could rent some of the rooms, but finding that the alterations would be too expensive they rented the house in its entirety to one Mobley in February 1947. Under the terms of the lease agreement with Mobley, he was to make the necessary repairs and remain in possession for four years at a monthly rental of $80.00. Mobley in turn sublet the house to Mrs. Williams, the tenant in this action, for a still higher rental of $150 a month. Mrs. Williams complained to the Rent Administrator about the rental Mobley was charging her. Several months later and before the Rent Administrator had acted, Mrs. Williams entered into a written agreement directly with the owners (the Parkers) whereby it was agreed that no matter what the outcome of any proceedings relative to the tenancy between Mobley and Mrs. Williams, Mrs. Williams would be allowed to remain on the premises as a tenant of the Parkers at a rental to be *"fixed and determined by and between the parties hereto, in a manner and amount agreeable to both parties hereto."* (Emphasis supplied.) On December 11, 1947, the Rent Administrator, as mentioned before, "determined" the rent ceiling at $77.-50. In January, Mobley refused to pay the Parkers the $80 rental and also refused to accept rent from Mrs. Williams. There-after Mrs. Williams began paying the $77.-50 rental directly to the Parkers. The Parkers subsequently inquired of the Rent Administrator about the ceiling imposed as they had not been a party to its establishment. They were advised that a $77.50 ceiling had been set and they continued to collect this rent through July 1949. The Administrator's order was, as above recited, rescinded after hearing.

■ With the foregoing facts as a background we examine the propriety of submitting to the jury the question of the landlords' good faith in this case. Good faith is generally regarded as a question of fact which depends upon many circumstances and conditions, and courts have usually left it to juries to say whether good faith is present. City of Indianapolis v. Domhoff & Joyce Co., Ohio App., 42 N.E.2d 207; Hoyt v. Duluth & I. R. R. Co., 103 Minn. 396, 115 N.W. 263.

There have been no appellate decisions on the issue of good faith under the particular statutory provision here involved. We are not aware that the question has ever been presented to this court or to our United States Court of Appeals. But there is a reasonable analogy between the question of good faith to be interpreted under this section 45–1610(c) and the good faith test as already interpreted by us several times under Title 45–1605(b) (3), which authorizes a landlord to obtain possession of his own property when he seeks it "in good faith" for his personal use as a dwelling.

■ In considering such good faith we said in Staves v. Johnson, D.C.Mun.App., 44 A.2d 870, 871, "In examining the question of the landlord's good faith, it is proper to consider all circumstances which shed light on the question," citing Gould v. Butler, D.C.Mun.App., 31 A.2d 867. We went on to say: "When there is substantial evidence challenging the good faith of the landlord, a question of fact is raised for determination by the jury or trial court." This is in line with the interpretation given the good faith provision in the Federal rent regulations. Hatfield v. Barnes, 115 Colo. 30, 168 P.2d 552. There seems no room for doubt that when there is evidence challenging the good faith of a landlord in

656

a case like this it becomes a question of fact. And we think that this certainly cannot be called a case where the good faith of the landlord stands unchallenged. Compare Olessoff v. Osbourn, D.C.Mun.App., 47 A. 2d 514. Giving the term good faith its ordinary meaning, we are convinced that it would have been error for the trial judge to have ruled as a matter of law that these landlords had acted in good faith.[4] The mere fact, as recited in the agreed statement of evidence, that they had prior to the beginning of the tenancy of Mrs. Williams rented the premises to another person at the January 1, 1941, rent ceiling of $41 per month, was sufficient to raise an inference of lack of good faith. Coupled with the other circumstances above recited, we think it is demonstrated that among reasonable men there would be substantial areas of disagreement as to the facts and as to inferences to be drawn therefrom, touching on the good faith of the landlords. The judge was therefore required to submit the case for jury decision.

Affirmed.

---

4. See Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766.