**HALL v. HENRY J. ROBB, Inc.**

**HENRY J. ROBB, Inc., v. HALL.**

Nos. 132, 133.

Municipal Court of Appeals for the
District of Columbia.

Dec. 3, 1943.

See, also, 32 A.2d 707.

J. Benjamin Simmons, of Washington,
D. C., for Elbert L. Hall.

Thomas X. Dunn, of Washington, D. C.,
for Henry J. Robb, Inc.

Before RICHARDSON, Chief Judge,
and CAYTON and HOOD, Associate
Judges.

HOOD, Associate Judge.

These appeals arise from an action by a
tenant against his former landlord, under
the District of Columbia Emergency Rent
Act,[1] for failure to furnish services re-
quired by order of the Rent Administra-
tor.

The tenant had been in possession of the
property, a dwelling house, long before
passage of the Act, paying rent of $45 per
month.

In February, 1942, pursuant to Section
4 of the Act, the tenant filed with the Rent
Administrator a petition for adjustment
of rent on the ground that the service sup-
plied was less than the minimum service
standard. In April, the landlord filed a
petition for adjustment of rent, seeking an
increase from $45 to $50 per month.
There was one hearing on the two peti-
tions and the Administrator, on June 2,
1942, entered the following order: "The
maximum rental ceiling for premises No.
144 C Street, N. E., is determined to be
$47.50 per month unfurnished. Landlord
to maintain minimum service standard, re-
pair damage caused by leak in the roof,
repapering where necessary, replace weath-
er boards on outside of building."

Following this order the tenant paid and
the landlord collected the increased rental,
but the parties disagreed as to the scope
of the order of June 2 relating to services,
and the tenant filed with the Administra-
tor a petition requesting an interpretation
of the order. After a hearing, the Admin-

---

[1] Code 1940, § 45—1601 et seq.

istrator on December 17 made the following order:

"1. Petition was filed for an interpretation of the order entered on June 2, 1942, for premises 144 C Street, N. E., rent $47.50 per month, unfurnished. Landlord to maintain minimum service standard, repair damage caused by leak in roof, repapering where necessary, replace weather boards on outside of building.

"2. Testimony was adduced at the present hearing that the front bedroom on the upper floor had been papered as a result of said order and some plastering done in two rooms on the same floor and that the roof had been repaired; that some weather boards were nailed back into place.

"3. That premises were inspected on December 12, 1942.

"4. a. The inspection revealed that while all weather boards seemed to be in place, most of them did not fit tightly together.

"b. All the paint was worn off the exterior of the house.

"c. In the front room on the first floor, three windows had broken sash cords.

"d. There was plaster out of the west wall of the back bedroom on the first floor.

"e. On the top floor, the wall paper was dirty and discolored in the hall. In the middle bedroom the ceiling is badly in need of wall paper, and showing many places damaged by leaks from the roof and the paper on the west, east, and south walls show places where water leaks in through the walls, around the windows, or leaked down the partition wall from the roof.

"f. There was a somewhat similar condition in the kitchen and there was plaster out in several places.

"5. That adjustment or repair including plastering and papering in all of the items listed as 4.a through f should be made because the conditions caused by said lack of repair constitute a reduction in the minimum service standard, for which the landlord is responsible by law, and the order entered herein on June 2, 1942.

And accordingly, the following is recommended:

"Order

"The Maximum Rent Ceiling for premises 144 C Street, N. E. is determined to be $47.50 per month, unfurnished, effective Dec. 28, 1942, and that all items mentioned in paragraph 4, be repaired or adjusted."

Prior to October, 1942, the tenant occupied a part of the premises and sublet the remainder, but in October moved out and thereafter sublet the entire premises. Knowledge that the tenant was subletting the entire premises first came to the landlord at the hearing of December 17, and on February 23, 1943, he filed suit for possession, alleging that the subletting constituted a violation of the lease. Judgment for possession was granted and that judgment affirmed by this court in Hall v. Henry J. Robb, Incorporated, D.C.Mun. App., 32 A.2d 707.

In the present action, the tenant alleged failure of the landlord to comply with the two orders of the Administrator in seven particulars, based mainly on the order of December 17, and sought recovery of $50 for each of the seven items, or a total of $350, plus reasonable attorney's fees. The landlord contended that he had complied fully with the order of June 2, but admitted that he did not comply with the order of December 17.

At the trial, the tenant testified that when he sublet the premises to his three subtenants he did not apply to the Rent Administrator for the purpose of fixing the rents.

The tenant was awarded judgment for $50, plus an attorney's fee of $50. From that judgment both landlord and tenant appealed.

Tenant's Appeal

The tenant's sole ground on appeal is that the judgment should have been for $350 instead of $50.

Was the trial court correct in limiting tenant's recovery to $50? The tenant contends that when several items are combined in one order by the Administrator they are in effect separate orders, and that he was not required to produce testimony as to the value of the items but could elect to predicate his action upon the provision for a $50 recovery for violation of each item in the order.

Section 10(a) [2] of the Act provides: "If any landlord receives rent or refuses to render services in violation of any provision of this Act, or of any regulation or order thereunder prescribing a rent ceiling or service standard, the tenant paying

---

[2] Code 1940, § 45—1610(a).

such rent or entitled to such service, or the Administrator on behalf of such tenant, may bring suit to rescind the lease or rental agreement, or, in case of violation of a maximum-rent ceiling, an action for double the amount by which the rent paid exceeded the applicable rent ceiling and, in case of violation of a minimum-service standard, an action for double the value of the services refused in violation of the applicable minimum-service standard or for $50, whichever is greater in either case, plus reasonable attorneys' fees and costs as determined by the court."

Under the Act a tenant is entitled to the services required by the applicable minimum service standard, as fixed by the Act or adjusted by the Administrator pursuant to the Act. The effect of the orders of June 2 and December 17, therefore, was to prescribe the minimum service standard applicable to the premises; and the action below was for a violation of that standard. In such an action the statute permits the tenant to claim double the value of the services refused or $50, whichever is greater. Proof of violation of the minimum service standard may be made by showing failure of the landlord to comply with the standard in one or more particulars; but the action is a single action for violation of the minimum service standard.

Recognizing the impossibility in many instances of proving the value of the service refused, the Act permits an action for $50; but, in our opinion, the Act does not authorize multiplication of that figure upon a showing of several particulars in which the service standard has been violated. If the tenant chooses not to prove the value of the services refused, he thereby concedes that double their value is less than $50 and is not entitled to recover more. If double the value of the services refused exceeds $50, he has the right to prove such value and recover double their amount. In the instant case, the trial court found a violation of the minimum service standard, and in the absence of proof of the value of the services refused, the court was correct in limiting recovery to $50.

## Landlord's Appeal

The landlord states the issues on his appeal to be:

"1. May an alleged tenant (a) who is not in possession or entitled to possession of the property; (b) who is violating the terms of the lease in subletting contrary to the terms thereof; (c) collecting rentals himself far in excess of the ceiling placed by the Administrator for the subtenants over whom the landlord has no control—charge the landlord with the violation of the Rent Control Act, in that the landlord is not complying with an order of the Administrator, when facts as heretofore shown exist, and is such a tenant actually a 'tenant' under the Rent Control Act entitled to sue for a penalty?

"2. Was the order of June 2, 1942, the final order of the Administrator, no appeal having been taken by any parties thereto, or was the order of December 17, 1942, the final order of the Administrator, there being an apparent conflict in both orders, and should the landlord be charged with the penalty when there existed this apparent conflict between both orders, having complied with the original and not having complied with the latter."

Was the tenant entitled to maintain the action? He was clearly a tenant within the meaning of the Rent Act. He was not in physical possession of the premises during all of the period in question, but as between himself and his landlord he was entitled to possession. Even if he was violating the terms of his lease, he was still entitled to possession until the landlord took legal steps to terminate the lease because of such violation. Until the judgment for possession was obtained the relation of landlord and tenant existed and the tenant was entitled to the protection of the Act.

Our ruling in the previous case [3] that the Rent Act protects actual tenants and not mere middlemen must be read in the light of the case in which that language was used. There, the right to possession was in issue; here, until suit for possession was brought, the right to possession was not in issue.

That the tenant, as between himself and his subtenants, may have violated the Rent Act in collecting rentals not fixed by the Administrator, is no defense to this action. It may give his subtenants a right of action against him, but it does not relieve his landlord from responsibility for complying with the Act. His violation, if such there was, injured his subtenants and not his landlord.

[3] Hall v. Henry J. Robb, Incorporated, supra.

■■ We are not required to pass upon the validity of the order of June 2 or the so-called "interpretative" order of December 17. Both landlord and tenant appeared at the hearings prior to each of the orders. Neither party sought a court review of either order. Section 9 of the Act provides for review of orders of the Administrator made pursuant to Section 4, on the petition of either party, by the Municipal Court for the District of Columbia.[4] That court is given exclusive jurisdiction to review orders of the Administrator, and to affirm or set aside the order or remand the proceeding. The Emergency Rent Act creates new rights and remedies and provides for judicial review of the orders of the Administrator by a specially provided method of appeal. That remedy for review, we think, is exclusive,[5] and a party to a proceeding before the Administrator, who is dissatisfied with the order, must pursue the remedy given by the statute, and cannot in an action brought for violation of that order collaterally attack it.

Affirmed.

---

[4] Fabianich v. Hart, D.C.Mun.App., 31 A.2d 881.

[5] Lindner v. District of Columbia, D. C.Mun.App., 32 A.2d 540.