**LINK et al. v. KALLAOS et al.**

No. 2660.

District Court, E. D. Missouri, E. D.

July 25, 1944.

George C. Dyer, of St. Louis, Mo., for plaintiffs.

Ray Lahey, of St. Louis, Mo., for defendants.

HULEN, District Judge.

Plaintiffs' complaint is for damages under Section 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 925(e), for an alleged overcharge on rent and is set up in 12 counts, claiming overcharge for 12 months, May 1943 to April

1944. The overcharge claimed in each count is $5 for which plaintiffs ask judgment in the sum of $50 and attorney's fees on each count and for each month. Defendants filed motion to dismiss counts 2 to 12 inclusive (designated by defendants as motion to "Strike") on the ground that plaintiffs have but one cause of action and that "said counts 2 to 12 inclusive constitute a splitting of a single cause of action". By brief filed, we understand defendants' position to be that plaintiffs are limited in their recovery to the amount of the overcharge for the 12-month period—"for $50.00 or for treble the amount by which the consideration exceeds the applicable maximum price, whichever is greater"— and a reasonable attorney's fee, as distinguished from plaintiffs' claim of $50 for each month. On the question presented it is our opinion that defendants are correct in their interpretation of the Act but that the complaint is not susceptible (at this time) to the interpretation placed upon it by the defendants.

As we read the statute and as we believe it should be interpreted, the thing proscribed by the law is the "selling" of a commodity above the maximum price set by regulations under the Act. Though the statute provides that "receipt of rent * * * shall be deemed the * * * selling of a commodity * * *," we believe that the determination of the question under consideration turns on what is the act of "selling." Certainly it is not "receipt of rent." In the present case, as we read the complaint, defendants sold the plaintiffs the right or the use and occupancy of an apartment. This commodity, namely, right to use and occupancy of the apartment, was sold at a stipulated price per month. It so happens that the plaintiffs used the apartment thus sold for a period of 12 months. Whether the defendants registered their apartment at a rental of so much per month or not, the rental was nevertheless fixed at the maximum being charged on the 1st day of March, 1942. The Act provides that no person shall receive any rent higher than the maximum rate thus fixed. It so happens that the plaintiffs used or purchased 12 monthly installments or rather portions, of the right to use and occupancy of the apartment. There was thus but one "selling" and not 12 sellings, if defendants' interpretation of the pleadings is correct.

We think the term "selling" as used in the statute, and the act, which give rise to the action, is used in the accepted meaning and is synonymous with the term sale. This term has a well recognized meaning.

"An agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price.

" 'A contract by which property is transferred from the seller to the buyer for a fixed price in money paid or agreed to be paid by the buyer.' De Bary v. Dunne [C.C.], 172 F. 940.

"There is a fundamental distinction between a contract to sell in the future and a present sale—often expressed by 'executory' and 'executed' sales. It depends upon whether the property in the goods is transferred. If transferred, there is a sale though the price be not paid; if not transferred, it is a contract of sale, even though the price be paid; Williston, Sales Sec. 2. Conditional sales constitute an intermediate class—the assent to the transfer, though not the transfer, being given at the time the bargain is made. Such partake more of the nature of sales than of contracts of sale, the title being transferred by force of the original bargain; id. Sec. 6." Bouvier's Law Dictionary, Vol. 2, Rawle's Third Revision, page 2983.

We can see no essential difference between the case of rental as thus presented, and the sale or "selling" of a recognized commodity. To take a common illustration, meat. The price of meat is fixed at so much per pound, just as the price for the use and occupancy of the apartment in question was fixed at so much per month. There could be a sale or "selling" to one customer (if he is fortunate enough to have the necessary stamps) of one pound or 12 pounds of meat and if the sale was above ceiling price there would be but one offence, because there was but one sale or "selling." In the case of the sale or "selling" of the use of the apartment to one person in violation of the rent regulation there is but one selling, one sale, one delivery, whether the one person took one installment or portion, as the rent was fixed, or several installments or portions on the basis of fixing of rent price. If there had been a rental of the apartment to 12 different persons during the 12-month period there

would have been 12 sales or "sellings," just as the sale of 12 pounds of meat to 12 different persons would have been 12 sales or "sellings," and if above ceiling price in either case, there would have been 12 separate offences. Take the converse of the illustration used. If there was a sale made of one-half pound of meat above the ceiling price placed on meat at so much per pound, we do not think it would be urged that there was no offence and likewise if the right to use and occupancy of the apartment had been sold for one-half month at a price in excess of the ceiling price set for the month, one could not claim there had been no offence committed. Can it be said the manner and time of rent payment determines the commission of the offence and not the "selling" of the premises? We do not think so. If this were true, two landlords doing exactly the same thing, and committing the same offence in charging in excess of ceiling price for rent, and one rented the premises by the week and collected rent by the week, and the other collected rent by the month, the former would have committed four offences and the latter only one; the former would be subject to punishment for four crimes and the latter only one.

We can see no reason for applying a different rule in the case of the "selling" of right to use and occupy an apartment at a price fixed for the month and the "selling" of a commodity on the basis of the price fixed. We will not place such an interpretation on the statute especially in the absence of language in the statute indicating that it calls for such an interpretation, or that the Congress so intended.

That Congress never intended that the Emergency Price Control Act of 1942 should be given an interpretation placing the "selling" of right to use and occupy housing accommodations on a different basis in determining liability for violation, than that provided for the "selling" of an ordinary commodity, is evidenced by the fact that in the amendment to the Price Control Act approved June 30, 1944, an effort has been made to improve the language of Sec. 108, Subparagraph (e), so that under the law as amended, 50 U.S.C.A. Appendix, § 925(e), it plainly appears that there can be no multiplying offences in the selling of the right to use and occupy housing accommodations at a price in excess of the maximum ceiling price, any more than there can be an accumulation of offences in the selling of commodities, where there is but one sale, "selling" or transaction, regardless of when and how the rent is collected. See Public Law 783—78th Congress, Title I—Amendments to the Emergency Price Control Act of 1942, approved June 30, 1944.

 The Court has expressed its opinion upon the question of law raised by the motion notwithstanding we are of the opinion that the motion should be overruled. Our views may serve some useful purpose. The complaint in this case is in 12 counts. Each count pleads an agreement between the plaintiffs and defendants, with respect to the monthly period of rental referred to in the count. Whether plaintiffs can prove such separate agreements remains to be seen, but we are not at liberty now to conclude otherwise. Aside from this consideration, the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the liberal construction which the rules require to be placed on pleadings resulting in elimination of technical forms of pleadings, we would be constrained to hold that the time to settle the question now being raised by the defendants is when the case is tried.

Motion of defendants to strike counts 2 to 12 inclusive from plaintiffs' complaint is overruled.