## GOLDBERG v. ROUMEL.

### No. 386.

Municipal Court of Appeals for the District of Columbia.

Argued June 11, 1946.

Decided June 28, 1946.

See, also, 40 A.2d 253.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

Harry Friedman, of Washington, D. C., for appellant.

Samuel W. McCart, of Washington, D. C., for appellee.

CLAGETT, Associate Judge.

Plaintiff brought an action under the District of Columbia Emergency Rent Act, Code 1940, 45—1610, claiming his landlord had refused to maintain the minimum service standard with respect to decorating the apartment occupied by the tenant. From a judgment for defendant, plaintiff appeals.

Plaintiff has rented and occupied the apartment in question since 1934. Defendant became the owner of the apartment building on July 1, 1943.

Plaintiff testified that the apartment, when originally rented, had been newly decorated and that the former owner had done extensive redecorating and repairing, both of his own volition and at the request of the plaintiff, and that on January 1, 1941, the "freeze date" under the Rent Act, the apartment was kept in excellent condition. He testified further that in August 1943, a month after the new owner had taken control, the apartment had deteriorated to the extent that the walls needed to be painted and the floors to be refinished. He reported this condition to the resident manager and requested that the work be done. He repeated the request in September and October. On November 1, 1943, plaintiff was advised by the resident manager that defendant would not redecorate the apartment or refinish the floors. Thereupon, on November 11, without notice to defendant, he purchased paint and other materials and repainted the apartment and refinished the floors, with the exception of the kitchen, which he claimed needed painting and new linoleum.

He was formerly a journeyman painter, but at the time he redecorated the apartment he was engaged in another business. The work was done partly during his vacation and partly after regular working hours. He spent $35.08 on materials and valued his time and labor at $80.

On cross-examination plaintiff testified that at the time he did the work he did so for his own personal comfort and satisfaction and without expectation of compensation or damages. He had no intention of doing this work "in lieu of services he was entitled to receive from the landlord."

The former owner, Sanders, testified on behalf of defendant that, in granting requests for repairs, he considered not only the need for the repairs but also the desirability of the tenant and the care taken of the apartment. He was also of the opinion that plaintiff's apartment was in good condition at the time he sold the building to defendant, July 1, 1943. Defendant testified that Sanders had informed him that "this apartment was in good shape."

There was received in evidence a copy of proceedings before the Rent Administrator regarding the minimum service standard for the apartment. Shortly after plaintiff had completed the decorating work, he requested defendant personally to replace the linoleum in the kitchen, which, after inspection, defendant refused to do. After a second request and refusal, plaintiff petitioned the Rent Administrator to order defendant to replace the linoleum and also to paint the kitchen. Following a hearing, the Rent Administration Examiner found that the rent ceiling for this apartment on January 1, 1941, was $51.50 per month and that the minimum service standard included "the maintenance of the premises in a proper condition by the landlord, said maintenance including the condition of the paint throughout the premises and the linoleum in the kitchen." The findings further stated that "the petitioner has done certain painting and refinishing floors in the premises at his cost" and that the linoleum needed replacing. Defendant was ordered to replace the linoleum, which, after some delay, he did. The Examiner did not order the kitchen painted. There was no finding that the minimum service standard had been breached at the time plaintiff did the decorating. No rent adjustment was requested for the period during which the apartment was alleged to have remained unpainted and the floors unfinished; neither did the tenant ask the Administrator to order that work done. The Examiner continued the rent ceiling at $51.50.

Plaintiff sued for twice the cost of the materials and the charge for his labor. He claimed those items represented the value of the services refused within the meaning of the Rent Act. He also asked for a $50 attorney's fee and costs.

At the conclusion of the testimony, the trial judge indicated that he would find for the defendant, and at the request of the plaintiff he made findings of fact and conclusions of law. The principal findings were that the evidence was not sufficient to establish any refusal or failure by the defendant to comply with the minimum service standard to which the plaintiff was entitled under the Emergency Rent Act, and that such evidence was not sufficient to establish any loss or expense to the plaintiff, suffered or incurred by reason of any failure on defendant's part to comply with such minimum service standard. We are not at liberty to set aside these findings unless they are clearly erroneous.

The pivotal question in this case is whether the minimum service standard was violated, or, stated otherwise, whether the redecorating for which plaintiff seeks compensation was reasonably necessary for maintaining such minimum service standard. Plaintiff had the burden of proof with respect to establishing this fact. The effect of the trial judge's findings was that he did not carry that burden. We conclude that the evidence was amply sufficient to support the findings.

There is a further reason why we believe the conclusion of the court below was correct. In this case there was no lease and hence no agreement by the landlord to repair. It is thoroughly established that in the absence of such an agreement the landlord is not compelled to make

such repairs as are involved here.[1] It results, therefore, that the only duty in this regard, established by the Rent Act, was to maintain the January 1, 1941, minimum service standard. The Rent Act gives the tenant his choice of three specific remedies. He may ask the Rent Administrator to order the repairs made, or to reduce the rent, or he may sue in the Municipal Court for twice the value of the services refused or $50, whichever is greater. Nowhere in the Rent Act is the tenant empowered to make the repairs himself and then sue for twice their cost. Here the tenant relies on the minimum service standard determined by the Rent Examiner, yet this determination was not made until after the work had been done. The tenant seeks to apply a common-law remedy restricted in its scope to an alleged violation of a statutory standard. Since he relies on the Rent Act solely for his standard, we believe he must rely on it also for his remedy.

Affirmed.

---

[1] Paratino v. Gildenhorn, 55 App.D.C. 271, 4 F.2d 938; Iowa Apartment House Co. v. Herschel, 36 App.D.C. 457, Ann. Cas.1912C. 206; see also Am.Jur. "Landlord and Tenant" § 657.