## WITTEK v. UNITED STATES.
### No. 532.

Municipal Court of Appeals for the
District of Columbia.

Sept. 10, 1947.

Ward B. McCarthy, of Washington, D. C., for appellant.

Floyd L. France, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This appeal involves the right of the United States Government acting through the National Capital Housing Authority to dispossess, without complying with the District of Columbia Emergency Rent Act, a tenant in a defense housing project known as "Bellevue Houses" located in southwest Washington. On a previous appeal from a judgment of the Landlord and Tenant branch of the Municipal Court dismissing the government's complaint we reversed upon the ground that the record was insufficient for us to pass upon the merits of the controversy. United States v. Wittek, D.C. Mun.App., 48 A.2d 805. The complaint having been amended and the deficiencies in the previous record having been supplied

by stipulation, the trial court gave judgment for possession in favor of the United States, and the tenant prosecutes this new appeal.

As amended the complaint named the United States of America as plaintiff and the tenant as defendant. It was filed by Floyd L. France, "acting under authority of the Attorney General and at the request of the Executive Officer of the National Capital Housing Authority." In the complaint it was alleged that the premises were in the possession of the defendant as a month to month tenant of the plaintiff at a monthly rental of $38.20, that the rent had been increased to $43 a month by the National Capital Housing Authority and the defendant had been requested to execute a lease at the new rental but had refused to do so and that as a result a thirty days' notice to quit terminating the tenancy had been served upon defendant in accordance with District of Columbia law. None of the grounds for possession provided for by the District of Columbia Emergency Rent Act, D.C. Code 1940, § 45—1601 et seq., were alleged, the government claiming that the Rent Act did not apply to suits brought by the federal government for possession of government housing. The trial court upheld this position and also overruled several technical contentions of the tenant.

The issues on this appeal are best summarized by the following statement of errors claimed by the tenant.

1. The United States of America was improper party plaintiff.

2. The written thirty days' notice was invalid.

3. The provisions of the District of Columbia Emergency Rent Act apply to defense housing.

4. Where the United States of America is party plaintiff, exclusive jurisdiction is vested in the District Court of the United States for the District of Columbia.

5. Defendant was denied due process of law.

### I.

### Was United States of America Proper Party Plaintiff?

It is the tenant's position that the suit should not have been brought in the name of the United States because either the National Capital Housing Authority or the Federal Public Housing Administration was the proper party plaintiff. The basis of his position with respect to the National Capital Housing Authority as the proper party plaintiff is that such agency formerly the Alley Dwelling Authority of the District of Columbia,[1] had taken over management and control of the Bellevue housing project under a so-called lease from the Federal Public Housing Administration, a constituent unit of the National Housing Agency, created by an executive order of the President as a consolidation of the various housing activities of the federal government.[2] The National Housing Agency in turn had taken over management and control of the project under authority of the President's executive order from the Navy Department, which constructed the project pursuant to power vested in it by Congress in 1940 for the purpose of providing housing for enlisted men of the Navy and Marine Corps and their families, field employees of the Navy, and workers with families engaged in essential national defense activities.[3] Defendant urges that as lessee of the property the National Capital Housing Authority is the agency authorized to receive rents from the tenants, and thus the suit should have been brought in its name. Defendant urges further that if the National Capital Housing Authority was not the proper party plaintiff the suit should in any event have been brought by the Federal Public Housing Administrator. He bases this position upon the fact that such administrator is the successor in interest of the Federal Works Administrator, and that un-

---

[1] Code 1940, § 5—101 et seq., as amended; see 11 Fed.Reg. 10111 (1946) et seq.

[2] Exec. Order No. 9070, Feb. 24, 1942, 50 U.S.C.A.Appendix, § 601 note, 7 Fed. Reg. 1529.

[3] Section 201, Second Supplemental National Defense Appropriation Act (1941), 54 Stat. 883.

der an amendment to the so-called Lanham Act Congress provided that "any proceedings for the recovery of possession of any property or project *developed* or *constructed* under this subchapter shall be brought by the Administrator in the courts of the States having jurisdiction of such causes and the laws of the States shall be applicable thereto."[4] (Italics supplied.)

We believe that the trial court correctly ruled that the United States was entitled to bring this action. It was stipulated that the project in question was not *"constructcd"* under the provisions of the Lanham Act, and we believe it equally true that it was not *"developed"* under that act. It follows that the quoted amendment to the Lanham Act does not apply to recovery of possession of units of this project. Furthermore and more important, the National Capital Housing Authority, the National Housing Agency, and the Federal Public Housing Administration are all, so far as the subject matter of this action is concerned, direct instrumentalities or agencies of the United States, and it has been uniformly held that the United States may bring suit in its own name to enforce rights of any of its departments, bureaus, or corporations regardless of the name by which they are known.[5] Here title to the property in question was vested in the United States; all of the funds for the construction of the project came from the federal treasury; under the so-called lease under which the National Capital Housing Authority manages the property all proceeds from rentals go into the federal treasury; the National Capital Housing Authority, the National Housing Agency, and the Federal Public Housing Administration were created by the United States for the purpose of carrying out governmental functions. Regardless, therefore of whether either of the named agencies could have filed the suit, we conclude that the right of the United States to sue in its own name is altogether clear.

## II.

### Validity of the Thirty Days' Notice.

■ Defendant's position with respect to the thirty days' notice is closely related to his contention regarding the proper party plaintiff. The notice to quit relied upon by the government as terminating the tenancy was written on a letterhead of the National Capital Housing Authority and signed by the property manager of the project. D.C.Code 1940, § 45—902, provides that a tenancy from month to month may be terminated by a thirty days' notice in writing "from the landlord to the tenant." Defendant urges that if the United States is the landlord and entitled to file the suit then it follows that the notice to quit should also have been given by the United States and that since it was in fact given by a representative of the National Capital Housing Authority it was insufficient to terminate the tenancy. However, as we have pointed out above, this project is owned by the United States and, as has been said in connection with another agency, the National Capital Housing Authority is "plainly one of the many administrative units of the United States Government, established to carry out the functions delegated to it by Congress. * * * In short it is an integral part of the governmental mechanism. And the use of a name other than that of the United States cannot change that fact."[6] The government, obviously, can act only through agents. It follows that the notice to quit was given by the landlord and therefore complied fully with the statutory requirement.

---

[4] 42 U.S.C.A. § 1522.

[5] United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283; Erickson v. United States, 264 U.S. 246, 44 S.Ct. 310, 68 L.Ed. 661; North Dakota–Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484; certiorari denied 291 U.S. 672, 54 S.Ct. 45, 78 L.Ed. 1061; United States v. Czarnikow-Rionda Co., 2 Cir., 40 F.2d 214, certiorari denied 282 U.S. 844, 51 S.Ct. 24, 75 L.Ed. 749; Russell Wheel & Foundry Co. v. United States, 6 Cir., 31 F.2d 826; cf. Department of Agriculture v. Remund, 67 S.Ct. 891, 91 L.Ed. —; Cherry Cotton Mills, Inc., v. United States, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835; Herren v. Farm Security Administration, 8 Cir., 153 F.2d 76.

[6] Department of Agriculture v. Remund, 67 S.Ct. 891, 892, 91 L.Ed. —.

### III.

### Do the Provisions of the District of Columbia Emergency Rent Act Apply to

### This Project?

Defendant's principal contention is that the District of Columbia Emergency Rent Act[7] applies by its explicit terms to all landlords and all tenants of all housing accommodations (as distinguished from commercial property) in the District of Columbia and hence that Bellevue Houses is embraced within its terms. That act, which under present law will remain in effect until March 1948, provides that rents may not be increased without the prior approval of the Rent Administrator. It also provides in Section 45—1605(b) that "No action or proceeding to recover possession of housing accommodations shall be maintainable by any landlord against any tenant * * * so long as the tenant continues to pay the rent to which the landlord is entitled" unless certain enumerated conditions exist, such as that the landlord desires possession for his own use and occupancy or the tenant has violated an obligation of his tenancy. Admittedly, none of these enumerated conditions existed in this case nor are any of them alleged in the complaint. The issue is clear, therefore, that if the provisions of the Rent Act apply to this housing project then the government has failed to establish a case to dispossess the tenant. It follows equally that if the Rent Act does not apply the government is entitled to possession because under the general law of the District of Columbia a tenancy from month to month may be terminated by giving a thirty days' notice to quit.

■ We have concluded that the District of Columbia Emergency Rent Act does not apply to this housing project, and hence that the government was entitled to bring this suit without alleging any of the grounds for possession provided for under that act. While the Rent Act by its terms applies to all landlords, the United States is not mentioned specifically and "There is an old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect."[8]

Furthermore, there are such conflicts between the local Rent Act and the statutes authorizing the construction and operation of the houses in this particular project as to strengthen our conviction that Congress did not intend the local Rent Act to apply to the project. For example, by the terms of the Second Supplemental National Defense Appropriation Act, 1941, supra, occupancy of these houses was limited to Navy personnel with families and Navy employees with families. Thus if a tenant ceases to be the head of a family or ceases to work in a Naval establishment, he is no longer eligible under the law to continue occupancy of such premises, but such change of status would not be a reason for eviction under the District Rent Act. Similarly, the District Rent Administrator is restricted as to the reasons for which he may grant rent increases, but under the acts of Congress creating federal housing such restrictions do not apply. It is significant, we think, that by the Emergency Price Control Act,[9] under which rents and eviction practices for defense areas outside of the District of Columbia were regulated until recently, the National Rent Administrator made regulations under which federal housing accommodations rented to Army or Navy personnel, including civilian employees of the War and Navy Departments, were made subject to rent schedules specified by those departments.[10] It is not contended that the local rent administrator was granted such authority. Throughout the war emergency the local rent administrator has acquiesced in the regulation of rents and eviction practices by the federal authorities in federal government housing in the District of Columbia and such administrative construction of the law while

---

[7] Code 1940 (Supp. V), 45—1601 et seq.

[8] United States v. United Mine Workers of America, 67 S.Ct. 677, 686, 91 L. Ed. ——, and cases cited therein.

[9] 50 U.S.C.A.Appendix, § 902(b) (c) (d).

[10] Rent Regulation for Housing, Oct. 31, 1945, Section 6(c) (2), 10 Fed.Reg. 13528, 13534.

not binding on the courts, merits some consideration. It appears clear, therefore, that the United States was entitled to bring this suit without regard to the provisions of the local Rent Act.

## IV.

### Since the United States Is the Party Plaintiff, Was Exclusive Jurisdiction Vested in the District Court of the United States for the District of Columbia?

Defendant urges that since the United States Government is the party plaintiff in the present suit the United States District Court for the District of Columbia had exclusive jurisdiction, and hence that the Municipal Court was without jurisdiction. A similar contention was raised before us in Ridgley v. United States, D.C.Mun.App., 45 A.2d 475, 73 W.L.R. 1069, and decided contrary to tenant's position. The tenant has advanced no new arguments on the point and therefore we adhere to our previous position.

## V.

### Due Process of Law.

Defendant urges that he was deprived of due process of law in that Landlord and Tenant rule 13 of the Municipal Court, providing that the complaint and summons in Landlord and Tenant actions shall be in the form specified in the rule, was not complied with. Included in that form is space for showing grounds for possession under the Rent Act. The amended complaint in the present action gave no reasons under the Rent Act for dispossessing the tenant. Since, as already indicated, we hold that the Rent Act does not apply to the present suit, it is obvious that it was not necessary to allege grounds for possession under that act. The complaint contained all necessary allegations under the applicable statute.

Since we conclude that the trial court correctly decided each of the issues involved, it results that the judgment below must be

Affirmed.