## WITTEK v. UNITED STATES.
### No. 9646.

United States Court of Appeals
District of Columbia Circuit.

Argued June 10, 1948.

Decided Sept. 27, 1948.
Writ of Certiorari Granted March 14, 1949.

Mr. Ward B. McCarthy, of Washington, D. C., for appellant.

Mr. Floyd L. France, of Washington, D. C., Attorney, Department of Justice, with whom Messrs. Roger P. Marquis, Frederick William Smith and John F. Cotter, all of Washington, D. C., Attorneys, Department of Justice, were on the brief, for appellee.

Before EDGERTON, CLARK and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

The United States brought an action in the Landlord and Tenant Branch of the Municipal Court of the District of Columbia to evict appellant upon his refusal to vacate a house in a defense housing project after his tenancy had been terminated by a duly given thirty days' notice. The notice was consequent to appellant's refusal to pay an increase in monthly rent from $38.20 to $43.00. The project was owned by the United States and managed by the National Housing Authority through its lessee, the National Capital Housing Authority. The rent was increased by an administrative determination of the latter Authority and without reference to the District of Columbia Emergency Rent Act.[1] After some preliminary proceedings,[2] the trial court entered judgment for the United States. The Municipal Court of Appeals for the District of Columbia affirmed.[3] We allowed an appeal to this court for purposes of a limited review. Two questions are to be decided:

1. Whether the Municipal Court has jurisdiction of civil suits brought by the United States seeking recovery of possession of real property situated within the District of Columbia; and

---

[1] Act of Dec. 2, 1941, 55 Stat. 788, D.C.Code, tit. 45, §§ 1601–1611 (Supp. VI).

[2] United States v. Wittek, D.C.Mun. App.1946, 48 A.2d 805.

[3] Wittek v. United States, D.C.Mun. App.1947, 54 A.2d 747.

2. Whether the conditions imposed by the District of Columbia Emergency Rent Act on suits for possession apply where such a suit is brought by the United States as landlord.[4]

■ 1. The Municipal Court clearly had jurisdiction of the action. The statute gives that court, as presently constituted, the jurisdiction which the Municipal Court theretofore had,[5] and such jurisdiction included actions to recover possession of real estate when a tenancy is terminated and the tenant, after notice, refuses to surrender possession.[6]

■ The contrary argument is that the District of Columbia Code gives the District Court of the United States for the District of Columbia jurisdiction over all civil actions in which the United States is plaintiff.[7] But that provision does not purport to confer exclusive jurisdiction, and it is in fact not different in substance from the clause of the United States Code which confers jurisdiction upon all District Courts of the United States in "all suits of a civil nature * * * brought by the United States".[8] It has long been established that this latter provision does not prevent the United States from appearing as party plaintiff in the local courts of a State.[9] If it may so appear despite the provision of the United States Code, we see no reason why it may not so appear in the local courts of the District of Columbia despite the almost identical provision of the District Code.

■ 2. We think that the District of Columbia Emergency Rent Act applies to the United States as a landlord so as to bar this instant action. The Act itself says that it applies to "any landlord".[10] Whether such general language as "person" in a statute (or, as here, "landlord") includes the United States, is a matter of context and statutory purpose—the "legislative environment".[11] The cause and the objective of the Rent Act are too well known to merit extensive elaboration. The impact of the defense program, with its concentration of workers in certain areas, created a shortage of housing which threatened to throw rents into an upward spiral, with consequent effects upon the cost of living and an impulse toward inflation. Congress acted in rigid and unmistakable fashion. It froze rents as of a fixed pre-war date.[12] It declared its purposes in a long opening sec-

---

[4] In its order permitting this appeal, this court framed the first of the above two questions as follows: "Whether the Municipal Court has jurisdiction of civil suits brought by the United States in which the amount claimed does not exceed $3,000.00, or whether the District Court has exclusive jurisdiction over all civil suits brought by the United States in the District of Columbia." Later examination shows that monetary limitations on the jurisdictions of the local courts are not before us by the facts of the case sub judice. This appeal was briefed and argued on the basis of the original question. However, no prejudice to either party results in this particular instance, since the core of either question is the effect of the statute (see note 7 infra) which confers upon the District Court jurisdiction in civil cases in which the United States is plaintiff. That key question was thoroughly briefed and argued.

[5] Act of Apr. 1, 1942, 56 Stat. 192, D.C. Code § 11-755 (Supp. VI).

[6] 31 Stat. 1193, 1382 (1901), as amended, 35 Stat. 623 (1909), 41 Stat. 555 (1920), D.C.Code §§ 11—735 to 737 and 45—910 (1940).

[7] 19 Stat. 253 (1877), D.C.Code § 11—306 (1940).

[8] 36 Stat. 1091 (1911), as amended, 28 U.S.C.A. § 41(1) (Supp.1947), now 28 U.S.C.A. § 1345 (1948).

[9] Cotton v. United States, 1850, 11 How. 229, 13 L.Ed. 675; United States v. Bank of New York Co., 1936, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331.

[10] D.C.Code § 45—1605(b) (Supp. VI):
"No action or proceeding to recover possession of housing accommodations shall be maintainable by any landlord against any tenant * * * so long as the tenant continues to pay the rent to which the landlord is entitled, unless—
"(1) The tenant is (a) violating an obligation of his tenancy (other than an obligation to pay rent higher than rent permitted under this Act or any regulation or order thereunder applicable to the housing accommodations · involved * * *) * * *." 

[11] Georgia v. Evans, 1942, 316 U.S. 159, 161, 62 S.Ct. 972, 86 L.Ed. 1346; United States v. Cooper Corp., 1941, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071; State of Ohio v. Helvering, 1934, 292 U.S. 360, 370, 54 S.Ct. 725, 78 L.Ed. 1307.

[12] D.C.Code § 45—1602 (Supp. VI).

tion of the statute.[13] It defined "landlord" and "person" in broad terms.[14] This Act was not passed for the purpose of regulating the relationships between landlord and tenant, or even for a mere regulation of rents that they might be fair and reasonable. Its purpose was to prevent practices tending to increase the cost of living. Deviations from its rigid fixations were permitted only upon proof of "peculiar circumstances", substantial changes in taxes or other maintenance or operating costs, or substantial capital improvements.[15]

At about the same time, Congress enacted a somewhat similar statute for the nation, including maximum rents for defense-area housing accommodations.[16] That Act specifically provided that the term "person" as used therein included "the United States or any agency thereof, or any other government, or any of its political subdivisions, or any agency of any of the foregoing".[17] Thus, so far as the national Act is concerned, there is no doubt that the United States is a landlord, and if the housing accommodations here involved had been in any defense area in the United States except in the District of Columbia, this landlord could not have raised these rents by mere administrative determination outside the processes of the statute.

Of course, the argument can be made that since Congress specifically named the United States as a "person" in the national Act but did not do so in the local Act, it meant to include the United States in the former but not in the latter. If there be any rationale to such a distinction, we fail to perceive it, and we are not inclined to give weight to a theoretical inference of that sort when we are dealing with a problem of the scope of price-and-rent control and the purpose of Congress is so crystal clear. Interpreting "person" in this statute in accordance with that purpose, as the rules of construction say we should, we think it includes any and every landlord, even the United States. Raising the rents of Government housing is just as much an

increase in the cost of living as raising the rents in any other housing project. This is a matter of public interest and not a matter of landlords' rights, sovereign or otherwise. We are inclined to think that the specific contingency of Government ownership of housing accommodations did not occur to the members of Congress in relation to the local Act, which passed about two months before the national Act was adopted, but that it was noted in the course of the latter consideration and the intention of Congress in respect to the subject was there and then made clear.

The United States makes this argument: "A mere reading of the above [the statutory declaration of purposes] shows that Congress did not have the United States in mind in enacting the Emergency Rent Act, since it could not have had in contemplation that the United States was an owner who would engage in 'profiteering and other speculative and manipulative practices.'"

Of course, Congress did not "have in mind" any particular landlord. What interests us in the argument is that this landlord, attempting to raise its rents by 12½ per cent, says that the statute does not prevent it from doing so, since Congress could not have thought that it would attempt to do so. The potential ramifications of such a rule of statutory construction are fascinating to contemplate. And, obviously, the true premise to the Government's conclusion must be the opposite of that which it states in that argument; i. e., the premise must be that Congress must have had in mind that the Government would raise its rents and intended that it should be permitted to do so.

We are presented with the argument that since this housing project was itself a defense project, intended for defense workers, any restriction upon control of its rents would impede the national defense program and thus violate one of the stated purposes of the Rent Act. The answer is, as we have already said, that the Rent Act does not purport to regulate the relationship of

---

[13] D.C.Code § 45—1601 (Supp. VI).

[14] D.C.Code, § 45—1611(g) and (h) (Supp. VI).

[15] D.C.Code § 45—1604 (Supp. VI).

[16] Sec. 2(b) of the Emergency Price Control Act of 1942, 56 Stat. 25, as

amended, 59 Stat. 306 (1945), 60 Stat. 671 (1946), 50 U.S.C.A.Appendix § 902 (b).

[17] Sec. 302(h) of the Act, 56 Stat. 37, 50 U.S.C.A.Appendix, § 942(h).

landlord and tenant, but merely fixes the rent ceiling, and in that fixation the protection of defense workers was a primary concern.

There is some argument that this project was a "Lanham Act" project and that the rents were placed by that statute in the control of the Federal Works Administrator,[18] and that, therefore, the Rent Act could not apply. Without entering upon the labyrinth of transfers through which this property passed, and from which we would have to conclude whether or not it was governed by the Lanham Act, we think the answer to the problem is in that provision of the Emergency Price Control Act which specifically subjects the United States to its provisions, including its rent control provisions. The amendment to the Lanham Act was enacted on January 21, 1942, and the Emergency Price Control Act on January 30, 1942. It seems clear that whatever authority the Housing Administrator and the War and Navy Departments had to fix initial rents and to control other features of the rentals, they were still subject to the rent control provisions of the Price Act when it came to raising rents. That fact answers the argument here made that "Lanham Act" property was not subject to rent control by any authority other than the Housing Administrator.

We cannot refrain from commenting upon the curious spectacle of one agency of the Government, the National Capital Housing Authority, asserting a right to violate a principle so insistently and emphatically proclaimed by the rest of the Government as essential to the public welfare. This Authority acts by and on behalf of its principal, the United States, and so must be treated as though it were in fact the whole of the executive branch of Government. But strong evidence would have to be presented to convince us that it was within the intent of Congress that while no other landlord could imperil the economic status of tenants in the District of Columbia, nevertheless the United States, in its capacity as landlord of defense housing, could raise its rents by the unimpeded administrative determination of this lessee Authority.

Appellee relies principally upon United States v. Mine Workers,[19] for the proposition that a statute does not apply to the United States unless it expressly says so. This is a familiar and well-established rule, but it is subject to the other rule which we have discussed above, that where the statute applies to "persons" and defines "person" in the broadest terms, the inclusion vel non of the United States is a matter of "legislative environment". We think that to be the rationale of the opinion in the Mine Workers case. The Court did not rest upon the stated rule as absolute, but said, " * * * we are inclined to give it much weight here" and "But we need not place entire reliance on this exclusionary rule."[20] It went on to examine the full text of the statute, its purposes, and its legislative history. It found clauses which "affirmatively suggest that the United States, as an employer, was not meant to be included."[21] Upon the whole of that consideration, it reached its conclusion. The same sort of process in the case at bar leads to the opposite result.

We do not have here the problem with which the Second Circuit Court of Appeals dealt in United States v. Weisenbloom.[22] The question there was whether the United States was subject to a New York State statute. The power of the State to regulate activities of the Federal Government was a primary concern, and in view of the grave doubt upon that question, the court construed the statute as not including the United States. No question of power is involved in the present case, as the local Rent Act was an act of Congress which had ample power in the matter.

The case will be remanded to the Municipal Court of Appeals with instructions to enter orders in accordance with this opinion.

Remanded with instructions.

EDGERTON, J., concurs in the result.

---

[18] Sec. 7 (later renumbered "304") of the Act of Oct. 14, 1940, 54 Stat. 1127, is amended by Act of Jan. 21, 1942, 56 Stat. 12, 42 U.S.C.A. § 1544.

[19] 1947, 330 U.S. 258, 272-3, 67 S.Ct. 677, 91 L.Ed. 595.

[20] Id., 330 U.S. at page 273, 67 S.Ct. at page 686.

[21] Id., 330 U.S. at page 275, 67 S.Ct. at page 687.

[22] 168 F.2d 698 (1948).