**CONNOLLY v. B. F. SAUL CO., Inc.**

No. 815.

Municipal Court of Appeals for the District of Columbia.

Argued June 27, 1949.

Decided August 5, 1949.

Rehearing Denied Oct. 18, 1949.

Peter J. Connolly, pro se (C. Walter Harris, Washington, D. C., on the brief), for appellant.

John J. Carmody, Washington, D. C. (Jo V. Morgan, Jr., Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

A tenant appeals from a summary judgment entered against him in an action he had brought for statutory damages, based on his landlord's alleged failure to maintain certain minimum service standards. His claim was that the landlord had curtailed certain telephone secretarial service and had failed to supply furniture on the roof of the apartment building involved. The dispute was first aired before the Rent Administrator on tenant's petition "for adjustment of rent or service." In his petition he requested: "Either the services and accommodations complained of * * * be restored or there be a corresponding reduction in rent." After holding hearings a rent control examiner made certain findings. After formal review these were approved by the Administrator on August 31, 1944. Such approved findings were as follows:

"1. That the maximum rent ceiling on January 1, 1941, was $65.00 per month with a minimum service standard which included use of certain roof garden furniture and supplemental telephone secretarial service on a 24-hour basis.

"2. That the roof furniture was replenished from time to time by the landlord and that 55 new pieces of such furniture were supplied during 1942.

"3. That the furniture supplied new in 1942 and the older pieces in use during the summer of 1942 were available for use in 1943 but in a dilapidated condition resulting from unusual wear and tear not attributable to any neglect by the landlord.

"4. The telephone secretarial service is limited to the receiving of messages during the absence of petitioner as a supplement to the petitioner's own 24-hour direct telephone service. It does not include any kind of switchboard service. This supplemental service now is being maintained only between the hours of 8 A.M. to 10 P.M.

"5. The respondent landlord has been unable to supply the supplemental secretarial service on an 24-hour basis due to the emergency war conditions affecting manpower and has incurred greater wage expense in maintaining the present service than for the 24-hour service formerly maintained.

"6. There is no need for maintenance of supplemental telephone secretarial service on a 24-hour basis at this time.

"7. Petitioner offered no evidence in support of his alternative request for reduction in the maximum rent ceiling.

"8. Housing accommodations, comparable in many details to those involved herein, not maintaining telephone secretarial service or roof facilities, have maximum rent ceilings as high as and higher than that applicable to the premises involved herein.

"9. The services and accommodations complained of by the petitioner are non-essential and are in the nature of luxury items, the maintenance of which would require manpower and critical materials needed for the successful prosecution of the war and national defense program.

"10. To carry out the purposes of the District of Columbia Emergency Rent Act it is necessary and appropriate to eliminate such non-essential items from the minimum service standard in this instance."

Accordingly the Administrator ordered that the rent ceiling for petitioner's apartment remain at $65.00 per month, based on a minimum service standard which includes supplemental telephone secretarial service daily from 8 A.M. to 10 P.M. and with the right of the tenant to use the roof garden space on the apartment without furniture therefor being supplied by landlord. From such order the tenant took an appeal to the Municipal Court, which then had jurisdiction in such matters, and the appeal was heard by a panel of three judges of that court as provided by law. On March 23, 1948 the court filed an opinion affirming the order of the Administrator. Tenant did not appeal that decision to this court.

In the meantime, while the above described litigation was under way appellant was attempting to pursue another remedy under the Rent Act, D.C.Code 1940, § 45—

1601 et seq. In late January 1944 he sued his landlord for damages in the Municipal Court, in regard to the same apartment unit and the same services which had been diminished. In this action he demanded $650.00 damages for the reduction in services, $50.00 for each of thirteen monthly violations.[1]

Later the defendant-landlord filed in that action a motion for summary judgment. The motion was based on the ground that a tenant cannot pursue his remedy before the Administrator, and after failing there, relitigate the same issues in a court action for damages. After briefs had been filed by each side summary judgment was granted to appellee. We rule that the trial judge was correct in entering judgment for defendant.

Despite certain contentions of appellant we think it plain that this situation is covered by Hicks v. Behrend, D.C.Mun.App., 40 A.2d 78, 81, 73 W.L.R. 79. There we held that "If a tenant feels that a landlord is failing to comply with the minimum service standard he has the choice of two remedies. He may seek relief before the Administrator under Section 4(c), or he may bring a court action under section 10(a) for double the value of the services refused or for $50, whichever is greater. However, he cannot pursue his remedy before the Administrator and failing in that retry the same issues in a court action for damages."[2]

We are unable to see any difference at all between what the tenant in that case was striving to accomplish and what was attempted here. The tenant in this case sought an order restoring the services which had been withdrawn or a corresponding reduction in rent. Failing to get either he then began the present litigation in the Municipal Court seeking statutory damages for the landlord's alleged refusal to furnish the two services in question. This we think the tenant had no

[1] This was upon an erroneous theory. In Hall v. Henry J. Robb, Inc., D.C.Mun. App., 34 A.2d 863, we held that proof of violation of a minimum service standard may be shown in several particulars, but that the action is a single one, and where tenant does not prove the value of

the services refused recovery is limited to $50.00. Appellant did not allege that $650.00 was the value of the services; he claimed thirteen separate violations, at $50.00 each.

[2] See also Schachter v. Singer, D.C. Mun.App., 45 A.2d 364.

right to do because the issues had already been tried by the Administrator and determined against him.

Appellant argues that the issues are not the same in both actions, and that the Administrator has no jurisdiction to award damages but only the power to adjust minimum service standards. He points out that the power to award damages for a violation of the Act is vested exclusively in the Municipal Court. And he cites Evans v. Schlein, D.C.Mun.App., 61 A.2d 32, and Schlein v. Evans, D.C.Mun.App., 61 A.2d 35. There we held that a dismissal for failure of proof, of an action before the Rent Administrator, did not constitute res judicata in a subsequent suit for damages. We also ruled that the tenant, having sought no adjudication as to a violation of service standards, was entitled to maintain an independent action in court for statutory damages.

It will be seen at a glance that the situation here is different. Here appellant sought a restoration of the services or a reduction of rent, not a mere finding of a rent ceiling and minimum service standard as of the freeze date. He predicated his entire case before the Administrator upon the theory of a refusal to maintain the service standards.

It is apparent that the Rent Administrator necessarily had to consider these issues fully in order to make findings and issue an order. This was necessary even though the identical issues would be presented in a suit by the tenant for statutory damages in the Municipal Court. Consequently it is clear that the issues tried before the Rent Administrator are subject to the rule of res judicata in this action. Conversely, had the Administrator made a finding that the rent ceiling had been violated or that there had been a refusal to comply with the minimum service standard, the tenant could certainly predicate upon such findings his court action for damages.

In fact such is the position appellant seeks to take here. He maintains that if anything the findings of the Rent Administrator as res judicata only go to support his right to an alternative remedy. He argues that these findings show conclusively that the minimum service standard had in fact been violated and that he is thus automatically entitled to sue for damages. But these assumptions are obviously predicated upon a misinterpretation of the Rent Administrator's findings. The record fails to show that the Administrator found that there had been either a violation of the minimum service standard or a refusal to supply the services.[3] Rather we believe it clear that his findings show the contrary, that there had in fact been no "refusal" or "violation" by the landlord. Hence such findings preclude this action for statutory damages.

With respect to the twenty-four hour secretarial service, Finding No. 5 was that the landlord had been *unable* to supply this service because of emergency war conditions. This is in effect a holding that he did not refuse to render such services, since inability to render services, where such inability does not result from the fault of the landlord, does not constitute a refusal under the Rent Act.

In regard to the other service reduced, that pertaining to the roof garden furniture, Finding No. 2 discloses that the furniture had been replenished from time to time and that fifty-five new pieces of furniture were supplied in 1942. In Finding No. 3 the Administrator found that the furniture supplied in 1942 and earlier was available for use in 1943 "but in a dilapidated condition resulting from unusual wear and tear not attributable to any neglect by the landlord." In Finding No. 9 he further found that the roof furniture, as well as the extra telephone service, was non-essential, the maintenance of which would require manpower and critical material needed for the successful prosecution of the war.

These findings do not add up to a violation of the service standard. We believe it evident that the landlord used all

---

[3] Code 1940, Supp. VI, § 45—1610(a), allows "in case of violation of a minimum-service standard, an action for double the value of the services *refused* in *violation* of the applicable minimum-service standard." (Emphasis added.)

reasonable means to comply with the standard. It would be unreasonable to require that roof garden furniture be purchased new each year, since experience teaches us that such furniture will ordinarily last for several seasons at least. Furthermore, we take judicial notice that during the war the government and various persons in official and unofficial positions were urging that the public forego luxury items which consumed manpower and critical war materials. We cannot say as a matter of law that the landlord "refused" to supply such items, so as to render him guilty of a service standard violation.

Consequently, under all the circumstances of the case and under the findings of the Administrator, there was not such a refusal by the landlord to comply with the minimum service standard as would enable the tenant to sue for statutory damages. The issues on which he bases his right to damages already having been litigated before the Rent Administrator, appellant cannot prevail in this action.

Affirmed.