## MANCUSO et ux. v. SANTUCCI et al.
### No. 865.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 10, 1949.

Decided Nov. 8, 1949.

Arthur C. Katims, Washington, D. C., with whom Albert A. Carretta, Washington, D. C., was on the brief, for appellants.

Joseph H. Schneider, Washington, D. C., with whom Ben Lindas, Washington D. C., was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Two tenants, husband and wife, appeal from an order dismissing an action they had brought to recover for certain rent overcharges. Their suit had been commenced by a bill of particulars [1] claiming $400 from each of appellees. They alleged that despite a monthly rent ceiling of $50, the defendants had demanded and received from them a total of $75 per month for eight months. Defendant Santucci was alleged to have received an overcharge of $22.50 per month and defendant Turner, an overcharge of $2.50 per month. Alleging that each of such receipts was a separate and distinct violation of the Rent Act, plaintiffs sought $50 for each violation. Under this theory they demanded $400 for eight monthly violations by defendant Santucci and the same amount against defendant Turner.[2]

---

1. This was an action of Class B, which under Municipal Court Rules covers claims of $500 or less, properly brought in the form of a bill of particulars. Although the total amount claimed was $800, it still remained a Class B case because, as we have held, several claims may be joined even though in aggregate they exceed the jurisdictional limitation. Taylor v. Yellow Cab Co. of D. C., D.C.Mun. App., 53 A.2d 691, and cases cited.

2. While there is no explanation in the record why two different persons should collect rent at the same time for the

Defendants filed motions to dismiss the bill of particulars which were granted by the trial court with leave to amend. Plaintiffs then elected to stand on their complaint and brought this appeal.[3] No reason for the dismissal was given by the trial court, but it appears to have been ordered on the general ground that the bill of particulars' failed to state a cause of action. This was the single issue presented in the briefs and argued before this court.

We rule that it was error to dismiss the action. To repeat a very familiar rule, a motion to dismiss concedes all facts well pleaded. If such facts state a cause of action, however loosely drawn the complaint may be, it is not subject to dismissal.[4] A dismissal may only be granted when "it appears certain that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its claim."[5] This rule should apply with even greater force in Class B actions where the pleadings are informal and where, as we have previously held, summary dismissals are not to be encouraged.[6]

Here, plaintiffs' bill of particulars sought to collect for overcharges of rent, a right bestowed upon them by the Rent Act.[7] In compliance with the statute they recited the existing rent ceiling on the premises and the rent which had been collected over an eight months period. On its face the bill stated an overcharge of rent for which the defendants would be liable for statutory damages. This in itself stated a cause of action, irrespective of an erroneous theory as to the amount recoverable. An improper measure of damages is not a ground for dismissal.[8] For, as it has been held: "Allegations of damages are essential in a bill of complaint, but they do not constitute the cause of action."[9] They merely set out what plaintiff thinks he will be entitled to recover. And an amount erroneously claimed, unless it sets up an excess of jurisdiction, does not render the suit subject to dismissal.

We are aware that in demanding $50 per month for each overcharge plaintiffs were claiming more than was authorized under the Rent Act. And as we have ruled twice before, tenants must rely on the Rent Act for their remedy and consequently "they must also rely on it for their standards of recovery."[10]

same premises, there is an intimation in the briefs that one of the defendants was the agent of the other. This naturally raises the question of whether the penalty of the Act could be assessed against both, but that issue is not before us here.

3. This action was proper, if unnecessarily litigious, for an appeal may be taken from such a judgment of dismissal. Cockrell v. First Federal Savings & Loan Ass'n, D.C.Mun.App., 33 A.2d 621.

4. Block v. Wilson, D.C.Mun.App., 54 A.2d 646.

5. United States v. Wittek, D.C.Mun.App., 48 A.2d 805, 807. This case was removed to the United States Court of Appeals and to the Supreme Court, 83 U.S.App. D.C. 377, 171 F.2d 8; Id., 337 U.S. 346, but in neither of said courts was this part of our ruling discussed or decided. See also Dollar v. Land, 81 U.S.App.D. C. 28, 154 F.2d 307, certiorari granted 329 U.S. 700, 67 S.Ct. 62, 91 L.Ed. 611, affirmed 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209; Topping v. Fry, 7 Cir., 147 F.2d 715; Winget v. Rockwood, 8 Cir., 69 F.2d 326; U. S. v. Thurston County, Neb., D.C.D.Neb., 54 F.Supp. 201, affirmed, 8 Cir., 149 F.2d 485, certiorari denied 326 U.S. 744, 66 S.Ct. 58, 90 L.Ed. 444, rehearing denied 326 U.S. 808, 66 S. Ct. 138, 90 L.Ed. 493; United States v. Association of American Railroads, D.C. D.Neb., 4 F.R.D. 510.

6. Goldberg v. Roumel, D.C.Mun.App., 40 A.2d 253, 254.

7. Code 1940, Supp. VI, § 45—1610 (a).

8. United States v. Light, D.C.M.D.Pa., 3 F.R.D. 3, 5; Jones v. Cedartown Supply Co., 65 Ga.App. 80, 15 S.E.2d 268; Dill v. Farmers Co-operative Co. of Oconto, 132 Neb. 256, 271 N.W. 692; Electric City Brick Co. v. Minter, 38 Ga.App. 583, 144 S.E. 824; Industrial Engineering Co. v. Republic Storage Co., 220 App.Div. 178, 220 N.Y.S. 623, affirmed Sup., 231 N.Y.S. 779; Capitol Hotel Co. v. Rittenberry, Tex.Civ.App., 41 S.W. 2d 697.

9. Wright v. Brush, 10 Cir., 115 F.2d 265, 267.

10. Evans v. Schlein, D.C.Mun.App., 61 A. 2d 32, 35. Citing Goldberg v. Roumel, D.C.Mun.App., 47 A.2d 790.

The statute gives an aggrieved tenant the right to bring "in case of violation of a maximum-rent ceiling, an action for double the amount by which the rent paid exceeded the applicable rent ceiling and, in case of violation of a minimum-service standard, an action for double the value of the services refused * * * or for $50, whichever is greater in either case * *."[11] It will be noted that the two types of violations are treated in the same sentence.

As to violations of a minimum-service standard, we have ruled that a tenant may recover either double the value of the services refused or $50, whichever is greater, and that though a service standard was violated in several particulars, the remedy was still a single action for the service violation, not one based on a multiplication of $50 upwards for each violation.[12]

■ We think the same principles apply to rent overcharges. We know of no reason in law or logic why the two types of violations should be treated differently in determining the applicable measure of damages. Indeed the rule we have stated as to service standard violations seems to apply even more naturally and practically to a rent ceiling violation. The value of a service standard is not always easy to determine, while the amount of a rent ceiling violation is always a matter of mere arithmetic.

For these reasons, as well as for those stated below, we think it is plain from the statute that Congress provided two measures of recovery to an aggrieved tenant. He is authorized to sue for double the amount of the overcharge exacted from him. When, however, such doubled amount is less than $50, then he is given the right to sue in the alternative for $50. In other words, the Act provides that in case of violations, the tenant may recover a minimum of $50. This amount was fixed so as to make it sufficiently attractive for tenants to sue for overcharges, and to discourage profiteering by landlords. But the Act does not provide, either literally or by implication, for a separate $50 recovery for each individual act of overcharge. It authorizes a single action for either double the amount of overcharge or $50, and not a multiplication of the $50 minimum.

We are aware that there are conflicting decisions on this subject, construing a similar provision of the National Rent Act, 50 U.S.C.A.Appendix, § 901 et seq. One group of courts has held that each collection of a monthly overcharge constitutes a separate violation, and that for each separate overcharge the tenant is entitled to recover $50.[13] But there is another group of decisions, with which we find ourselves in agreement, which hold that the violation is to be considered entire, and that if twice the total overcharge exceeds the $50 minimum, such larger amount is the maximum which may be recovered by a tenant.[14] This we think is the correct and reasonable view to be taken of the matter. This is the rule to which we have committed ourselves as to service violations (treated as we have seen in the same sentence in the Rent Act), and there is no logical reason for departing from that rule in dealing with rent overcharges. If each weekly or monthly overcharge could be treated as a separate violation, a landlord who had collected some trifling amount over the ceiling could still be forced to pay $50 for each violation—a result possibly ruinous to him and not in keeping with the purposes of the Act.

Reversed and remanded for further proceedings in accordance with this opinion.

11. Code 1940, Supp. VI, § 45—1610 (a).

12. Hall v. Henry J. Robb, Inc., D.C.Mun. App., 34 A.2d 863; Zindler v. Buchanon, D.C.Mun.App., 61 A.2d 616.

13. Gilbert v. Thierry, D.C.Mass., 58 F. Supp. 235, affirmed 1 Cir., 147 F.2d 603; Kalwar v. McKinnon, 1 Cir., 152 F.2d 263; Thompson v. Taylor, D.C.S.D.Fla., 60 F.Supp. 395, judgment changed in D. C., 62 F.Supp. 930.

14. Bowles v. Milner Hotels, D.C.W.D.Ky., 62 F.Supp. 493; McCowen v. Dumont, D.C.W.D.Mo., 54 F.Supp. 749; Link v. Kallaos, D.C.E.D.Mo., 56 F.Supp. 304.